GEORGE KEMP REAL ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10126.   Promulgated June 2, 1949.

*Alexander S. Andrews, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

944

## OPINION.

HILL, *Judge*: Petitioner argues that it is entitled to relief under section 722 (a) and (b) (5) because its tax computed without the benefit of section 722 results in an excessive and discriminatory tax. It claims that its standard of normal earnings was $300,000 per year, as established by the lease it entered into in 1920 with its lessee, and that the difference between the rental of $300,000 and $250,000 received by it

under the terms of the agreement of 1935 with its lessee "measured the inadequacy" of its income for the base period years.

Petitioner states that the factor which qualifies it for relief provided by section 722 was the "duress of circumstances which compelled" it to modify its leasing agreement in 1935 so that its income from the U-shaped property involved was reduced by $50,000 annually. These circumstances, petitioner states, were the effects of the general depression:

\* \* \* which had, in 1932 and 1933, caused them [the Gimbel group] a loss of approximately eight million dollars, or thereabouts, and that their sales had dropped \* \* \* to such a figure \* \* \* that they had to have relief to keep in business, \* \* \* and, therefore, we must give them relief in order to prevent a collapse \* \* \*.

As pointed out above, petitioner gave concessions to Saks & Co., beginning in 1932 and continuing through 1935. In 1935 representatives of the Gimbel group came to petitioner with a proposition the result of which is set forth in detail in our findings. The proposal generally provided that petitioner purchase from the Gimbel group lot No. 617 for $1,000,000 and that it reduce the rental on the U-shaped property by $50,000 for 4½ years beginning January 1, 1936. Such proposal was made to petitioner so that the Gimbel group, including petitioner's lessee, Saks & Co., could reduce its funded debt, thereby cutting down its fixed charges and permitting the organization to survive the effects of the general depression. If petitioner had not agreed to the terms set forth by the representatives of the Gimbel group, that organization, including petitioner's lessee, would have been faced with bankruptcy. We are thus confronted with the question, Is a taxpayer whose income in the base period was affected only by the general depression and in like manner to other taxpayers in comparable businesses and whose profit or income cycle has not been shown to be materially different from that of business generally during the period involved, entitled to relief under section 722 (b) (5)? We believe the question must be answered in the negative.

Section 722 (b) (5), which is the only section other than section 722 (a) which petitioner seeks to invoke, was intended to provide relief for taxpayers who were unable to meet the specific tests laid down in subsections (b) (1), (2), (3) and (4). It provides as follows:

SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess

profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

\* \* \* \* \* \* \*

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period *and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.* [Italics supplied.]

In a committee report discussing section 722 (b) (5) it is stated that a taxpayer may be entitled to relief under subsection (b) (5) "if it can satisfy the Commissioner or the Relief Court that its claim is consistent with the principles underlying the specific tests [as set forth in subsections (b) (1), (2), (3) and (4)]." H. Rept. 2333, 77th Cong., 2d sess., p. 21; see also pp. 24 and 146; S. Rept. 1631, 77th Cong., 2d sess., pp. 36 and 202. We think that to give the relief which petitioner requests would be inconsistent with subsection (b) (3), which provides as follows:

(3) the business of the taxpayer was depressed in the base period by reason of conditions generally prevailing in an industry of which the taxpayer was a member, subjecting such taxpayer to

(A) a profits cycle differing materially in length and amplitude from the general business cycle, or

(B) sporadic and intermittent periods of high production and profits, and such periods are inadequately represented in the base period.

See also subsection (b) (2).

In Senate Report 1631, *supra*, p. 36, it is stated that to be entitled to any relief under section 722 the taxpayer must show "(3) Depression due to a profits cycle differing from the general business cycle." The petitioner has not shown in this proceeding that its business cycle differed materially in length and amplitude from the general business cycle; in fact, the effect of the depression which petitioner claims qualifies it for section 722 relief was permanent and characteristic of business in general during the period involved. Hence, since we believe that to grant the relief which petitioner here seeks would be inconsistent with the principles of section 722 (b), we must conclude that it is not entitled to any relief under section 722.

In its argument that its claim for relief under section 722 (b) (5) is not inconsistent with the specific tests set forth in subsection (b) (3), petitioner stated that subsection (b) (3) "obviously [has] nothing to do with petitioner." That is the extent of its argument on this point and, in view of the above, we can find no merit in that conclusion.

Petitioner states, in addition, in answer to the argument that the general depression is not a qualifying factor for section 722 relief, that:

\* \* \* we were not subjected to the business depression except indirectly or secondarily through our tenant; it was not our business, but his [*sic*] sales (or rather his parent corporation's sales) that were cut in half by the depression. The depression did not reduce our reserved rent, but only the tenant's capacity to continue paying it. \* \* \*

If we should follow petitioner's reasoning to its logical conclusion, it could be said that petitioner's lessee, or the entire Gimbel group of which it was a member, was not affected directly by the depression, but only indirectly to the extent that its customers were unable to trade with Saks Fifth Avenue, or any of the other stores comprising the group. We can find no merit in petitioner's contention.

Petitioner further attempts to bolster its position by citing out of context a statement from *Philadelphia, Germantown & Norristown R. R. Co.*, 6 T. C. 789, 798, as follows: "The 'standard of normal earnings' for a period of 999 years from December 1, 1870, was actually established by the lease executed in 1870. \* \* \*" Petitioner offers that statement in support of its contention that the standard of normal earnings in the instant case was established by the lease entered into in 1920. That case, however, supports our conclusion here, for in the instant proceeding there was a new agreement entered into between petitioner and its lessee in 1935, which established the standard of normal earnings for the base period years.

In view of the above, therefore, we hold that petitioner is not entitled to any relief under section 722 (b) of the Internal Revenue Code, and, since it has not shown that the tax computed without the benefit of section 722 was excessive and discriminatory within any of the provisions of section 722 (b), it is not entitled to any relief under section 722 (a) of the code.

It follows that respondent's determination must be sustained.

Reviewed by the Special Division.

*Decision will be entered for respondent.*